IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AARON JAMES PIERCE,

                Plaintiff,

v.

CAMDEN YOUNGMAN,

                Defendants.

Case No. 20-cv-888-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendant Camden Youngman's motion for summary judgment on exhaustion (Doc. 44). Plaintiff Aaron James Pierce, who at the time he filed his Complaint was an inmate of the Illinois Department of Corrections ("IDOC"), filed a response (Doc. 68).[1] Youngman filed a reply (Doc. 70).

### BACKGROUND

On September 2, 2020, Pierce filed a Complaint pursuant to 42 U.S.C. §1983 alleging that on August 14, 2020, he was sprayed with mace and punched in the shower (Doc. 1). The Complaint was dismissed for failure to state a claim because Pierce failed to identify the individual who allegedly attacked him (Doc. 15). He was granted leave to amend his Complaint, and on December 22, 2020, Pierce filed an Amended Complaint

---

[1] IDOC's inmate directory currently lists Pierce as paroled. He has not filed a notice updating the Court on his whereabouts. *See* Illinois Department of Corrections, Individuals in Custody, https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Dec. 10, 2021).

alleging Camden Youngman used excessive force against him (Doc. 22). He was allowed to proceed on the following single Count:

Count 1:    Eighth Amendment excessive force claim against Youngman for the August 14, 2020, shower attack.

(Doc. 26, p. 2).

Pierce submitted one grievance, dated September 17, 2020, relevant to the allegations in his Amended Complaint. That grievance alleges that Youngman used excessive force against him (Doc. 44-2, p. 3-4). He asked to be kept away from Youngman and to be transferred (*Id.* at p. 3). On September 22, 2020, the counselor received the grievance (*Id.*). On October 16, 2020, the counselor returned the grievance noting that she spoke with Sergeant Spiller who maintained that staff used necessary force to subdue Pierce (*Id.*). She also noted that Pierce was taken to the healthcare unit after he was secured (*Id.*). The grievance was not submitted to the grievance officer nor did the Administrative Review Board ("ARB") ever receive Pierce's grievance (Docs. 44-4, p. 3 and 44-3, p. 4).

In his response, Pierce admits that he did not pursue his grievance beyond the counselor (Doc. 68, p. 1). Instead, he argues that that he did not need to pursue the grievance further because the grievance proved his injury was sustained as a result of Youngman's excessive force.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are]

entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

A. **Illinois Exhaustion Requirements**

As an IDOC inmate, Pierce was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's ("CAO") response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when

reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a).

## ANALYSIS

The parties do not dispute that Pierce did not pursue his grievance after he received a response from the counselor. Pierce, instead, argues that he did not need to pursue his grievance beyond the counselor because his grievance proved that his injuries were sustained by Youngman. Because the issue rests on a purely legal question, whether Pierce needed to pursue his grievance through the entire grievance process, the motion does not require an evidentiary hearing

A prisoner must take all steps required by the prison's grievance system to properly exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). He also must exhaust all "available" remedies. *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005). An inmate does not need to appeal his grievance when the grievance was "resolved as he requested and where money damages were not available." *Id.*

Pierce argues that he did not need to appeal his grievance further because the counselor determined that Youngman used excessive force. But Pierce's interpretation of the counselor's findings is inaccurate. The counselor merely noted that staff used "necessary force" to subdue Pierce. Further, Pierce did not receive any of the relief that he was seeking through his grievance; there was no indication in the response that Youngman would be kept away from Pierce or that Pierce would be transferred as he requested. Because Pierce did not receive any of the relief he was seeking, he did not exhaust all of his available remedies prior to filing suit. His complaints were not resolved and, as a result, he was required to appeal the grievance. Pierce, admittedly, did not submit his grievance to the grievance officer or ARB for review. Thus, the grievance was not fully exhausted.

## CONCLUSION

For the reasons stated above, Youngman's motion for summary judgment (Doc. 44) is **GRANTED**. The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   December 13, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**